[Cite as *State v. Williams*, 2023-Ohio-965.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2022-CA-55 |
| | : | |
| v. | : | Trial Court Case No. 2022CR0190; |
| | : | 2022CR0313 |
| JAMES D. WILLIAMS IV | : | |
| | : | (Criminal Appeal from Common Pleas |
| Appellant | : | Court) |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 24, 2023

. . . . . . . . . . .

MEGAN A. HAMMOND, Attorney for Appellee

GLENDA A. SMITH, Attorney for Appellant

. . . . . . . . . . . .

EPLEY, J.

{¶ 1} James D. Williams IV appeals from two judgments of the Greene County Court of Common Pleas, which found that he was incompetent to stand trial in two separate cases and ordered him to receive treatment to restore his competency. Williams claims that the trial court erred in ordering a competency hearing and in denying his request to represent himself. For the following reasons, the trial court's judgments

will be affirmed.

## I. Facts and Procedural History

{¶ 2} On May 13, 2022, Williams was indicted for aggravated possession of drugs (methamphetamine), a fifth-degree felony, in Greene C.P. No. 2022 CR 190.   Williams pled not guilty to the charge, and the court set an own recognizance bond.   In early July, Williams's retained counsel entered an appearance, requested a status conference, and filed demands for discovery and a bill of particulars.   A final pretrial conference was scheduled for August 2, 2022.

{¶ 3} On July 15, 2022, a grand jury indicted Williams for aggravated arson, a felony of the second degree, in Greene C.P. No. 2022 CR 313.   Four days later, the State filed a motion to deny bail. (The municipal court had set bond at $450,000 with no ten percent.)   In its supporting memorandum, the prosecutor indicated that Williams had "an extensive and well-documented history of mental health concerns" and was accused of igniting a fire within his elderly parents' townhome.   The fire had been started and concentrated in Williams's bedroom and, upon inspection, police discovered that he had placed combustible materials along the baseboards of his room and covered his windows with two closet doors and a mattress.   They further observed burn marks from the floor to the ceiling in the same area as a burnt cardboard box.

{¶ 4} The State's memorandum further explained that, prior to the fire, Williams had called 911 multiple times, claiming that "people" were in the attic and he smelled smoke; police and fire personnel investigated the calls and found them to be unsubstantiated.   Williams continued to call 911, reporting that police officers were

hidden within the walls of his room and that he was "tired of being constantly watched by police parked outside of the residence."   Between January 28, 2021 and July 5, 2022, Williams had made roughly 45 calls to make these claims.   The prosecutor indicated that these were delusions, which were the product of Williams's mental illness.   In addition, the prosecutor noted that Adult Protective Services had made referrals for Williams to seek mental health treatment.   The State maintained that Williams was a danger to himself, his parents, law enforcement, and the community.

{¶ 5} On July 21, 2022, Williams retained the same defense attorney to represent him in his arson case.   At Williams's arraignment in that case, the trial court denied bail, pending a hearing.

{¶ 6} On August 2, 2022, Williams's counsel filed a motion for a competency and sanity evaluation in the possession case, but not in the arson case. (Williams states in his brief that a motion for a competency evaluation was filed in the arson case on July 19 and July 27, but we do not see any such filings in the record.)   Counsel did not provide a supporting memorandum for the motion.   The next day, the trial court issued a judgment entry in the arson case (but not the possession case) granting the motion for a competency and sanity evaluation.   Williams's evaluation was conducted at the Forensic Psychiatry Center for Western Ohio on September 2, 2022.

{¶ 7} Following the trial court's order that he receive a competency and sanity evaluation, Williams began filing numerous pro se motions, including motions to dismiss retained counsel and to prohibit the forensic evaluation; the motions were stricken by the trial court.   On September 15, 2022, defense counsel moved to withdraw as counsel of

record in both cases, stating that communication between her and Williams was "irretrievably broken." Counsel expressed that it would be in Williams's best interest if he were granted other counsel.

{¶ 8} In the evaluation report from the Forensic Psychiatry Center, Williams's forensic examiner determined that Williams was a "seriously mentally ill person who is not intellectually disabled." While the examiner found that Williams had the factual knowledge to understand the nature and objective of the proceedings against him, he concluded that Williams could not rationally appreciate the proceedings or reasonably assist in his defense. Williams's mental state was "replete with psychosis in the form of paranoid, persecutory, grandiose delusional ideas (i.e., those having no apparent basis in fact, yet are so firmly held that the subject wholly rejects evidence to the contrary.)" Williams's delusional statements related to perceived persecutorial conduct by the judiciary and various law enforcement agencies. The report concluded that Williams was incompetent to stand trial, as defined by R.C. 2945.371(H)(3). No sanity evaluation was provided.

{¶ 9} The parties appeared for a competency hearing in both cases on October 6, 2022. At the beginning of the hearing, the trial court noted that retained defense counsel had moved to withdraw. The court asked counsel if the breakdown in communication was so severe as to jeopardize Williams's right to effective assistance of counsel. When defense counsel responded affirmatively, the court removed her from both cases and told her she was free to go. The court immediately appointed new defense counsel, who was present in the courtroom. (New counsel spoke with Williams in the jail prior to the hearing.)

{¶ 10} Williams objected to the court's appointment of new counsel. He noted that he had retained his prior defense attorney and that he had never requested the appointment of counsel. Williams expressed that he wanted to represent himself, and he indicated that he had entered "a notice of appearance as counsel pro se." He asserted that he was "competent, highly intelligent, of great sound and mind and body and spirit[.]"

{¶ 11} The trial court asked Williams a couple of questions related to statements he had made previously. For example, the court asked if Williams believed he needed a bullet-proof vest to come to court because the CIA had a $1 million hit on him and if Williams had mentioned that the Attorney General was involved in the "inquisition" with the "feds." Williams responded that he had made a request for a bullet proof vest due to matters he was litigating in federal court with Wright Patterson Air Force Base and the FBI. He told the court that it could reach out to the Attorney General's Office for information about that concern. Williams stated that these issues were not part of the record in the cases before the trial court and were not relevant. He emphasized that he objected to a competency evaluation and had retained counsel specifically to prevent that. Williams stated that it was the State's strategy "to demobilize and try to attempt to paint and portray a picture of the Defendant as he has some kind of mental issue, knowing darn well that he does not and he is * * * well aware of what's going on."

{¶ 12} When Williams asked that he be permitted to exercise his rights and prove his innocence, the court responded, "Well, the Court's read the report from the Doctor in this case and, consistent with your statements, there's clearly cognitive defects and

delusions that stand out." The court found that Williams was incompetent to make decisions regarding the appointment of new counsel.

{¶ 13} The trial court then orally reviewed the conclusions stated in the competency report, to which the prosecutor and new defense counsel stipulated, and found that Williams was incompetent to stand trial. It ordered him to be conveyed to Summit Behavioral Healthcare for restoration treatment. The same day, the trial court filed a written entry consistent with its oral pronouncement. In a separate entry, the court also ordered the public defender's office to appoint new counsel for Williams. The attorney who replaced Williams's retained counsel during the competency hearing filed a notice of appearance on October 12, 2022.

{¶ 14} Williams appeals from the trial court's October 6, 2022 judgment finding him incompetent and committing him for restoration treatment. (He later "clarified" that he was also challenging the trial court's failure to dismiss his case on speedy trial grounds.) Because he has been found to be a vexatious litigator, Williams sought leave to proceed with his appeal. He also has filed numerous other pro se motions. We granted the motion for leave to appeal and, at the State's request, have expedited this appeal. Williams raises two assignments of error for review.

## II. Williams's Competency Hearing

{¶ 15} In his first assignment of error, Williams claims that the trial court erred in ordering a competency hearing. He asserts that the trial court had no reason to doubt his competency, and thus the competency evaluation and hearing should not have been held. Williams does not challenge the trial court's conclusion, following the hearing, that

he was incompetent to stand trial and its order that Williams receive treatment to restore his competency.

## A. Reviewability of Order Requiring Competency Evaluation and Hearing

{¶ 16} The State contends that we cannot consider Williams's argument, because the decision to order a competency evaluation and/or hearing is not a final appealable order.

{¶ 17} We generally examine the finality of competency orders under R.C. 2505.02(B)(4). Under that statute, an order is immediately appealable if it "grants or denies a provisional remedy" and both (1) "[t]he order in effect determines the action with respect to the provisional remedy and prevents a judgment in the action in favor of the appealing party with respect to the provisional remedy; and (2) [t]he appealing party would not be afforded a meaningful or effective remedy by an appeal following final judgment as to all proceedings, issues, claims, and parties in the action." R.C. 2505.02(B)(4). The Ohio Supreme Court has explained that a "provisional remedy," as defined by R.C. 2505.02(A)(3), is "a type of *proceeding*." (Emphasis sic.) *State v. Muncie*, 91 Ohio St.3d 440, 447, 746 N.E.2d 1092 (2001). "An 'order' is thus properly understood as the mandate from the trial court that grants or denies the particular relief at issue in that proceeding – not as the provisional remedy itself." *Id.*, citing R.C. 2505.02(B)(4).

{¶ 18} We agree that Williams could not have immediately appealed from the trial court's decision ordering a competency evaluation when the examination had not yet been held and a determination of his competency had not yet been made. *State v. Eyajan*, 11th Dist. Ashtabula No. 2019-A-0005, 2019-Ohio-419, ¶ 7; *accord State v.*

*Fitzpatrick*, 2022-Ohio-4381, __ N.E.3d __ (1st Dist.) (order requiring defendant to submit to a forensic psychological examination by an expert chosen by the State to determine whether he had a serious mental illness within the meaning of R.C. 2929.025 was not a final appealable order).

{¶ 19} In this case, Williams has not appealed from an order requiring him to submit to a competency evaluation. Rather, he appeals the trial court's judgment finding him incompetent to stand trial and ordering him to undergo restoration treatment. It is well established that "an order finding a criminal defendant incompetent to stand trial and committing the defendant to an institution for the restoration of mental competency is a final appealable order under R.C. 2505.02(B)(4)." *State v. Upshaw*, 110 Ohio St.3d 189, 2006-Ohio-4253, 852 N.E.2d 711, syllabus; *see State v. Glynn*, 2d Dist. Montgomery No. 28824, 2020-Ohio-7031, ¶ 5.

{¶ 20} The question, therefore, is whether the trial court's orders requiring a competency hearing and ordering Williams to submit to a pre-hearing mental evaluation are encompassed within this appeal. We conclude that they are. The trial court's initial order that Williams undergo a competency evaluation was an integral part of the competency proceeding (the provisional remedy), as was the competency hearing following the receipt of the evaluator's report. The order finding Williams to be incompetent and requiring treatment was the culmination of the competency "proceeding." Upon an appeal from the order finding Williams to be incompetent, we find it appropriate to address all issues directly related to the trial court's competency determination.

**B. Appropriateness of Competency Hearing**

{¶ 21} Turning to the merits of Williams's argument, we find no basis for reversal.

{¶ 22} Under fundamental principles of due process, a criminal defendant who is legally incompetent may not be tried. *E.g., State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, ¶ 36. "It has long been recognized that 'a person [who] lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.' " *State v. Smith*, 89 Ohio St.3d 323, 329, 731 N.E.2d 645 (2000), quoting *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).

{¶ 23} R.C. 2945.37(A) defines incompetency consistent with the constitutional standards. The supreme court has made clear that "[i]ncompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986).

{¶ 24} "A defendant is presumed to be competent to stand trial." R.C. 2945.37(G). However, the trial court, prosecutor, or defense counsel "may raise the issue of the defendant's competence to stand trial." R.C. 2945.37(B). If the issue is raised, the trial court may order one or more evaluations of the defendant's present mental condition. R.C. 2945.371(A). If the issue is raised before trial has commenced, the trial court is required to hold a hearing on the issue. *Id.*; *State v. Lawson*, 165 Ohio St.3d 445, 2021-Ohio-3566, 179 N.E.3d 1216, ¶ 66.

{¶ 25} In *State v. Hough*, Ohio Slip Opinion No. 2022-Ohio-4436, __ N.E.3d. __, ¶ 24 (plurality opinion), a plurality of the Ohio Supreme Court recently commented that R.C. 2945.37 places minimal burdens on how to "raise" a defendant's competency. The opinion explained:

> Revealing in a motion for a competency evaluation the facts supporting the request may be the better practice, but the statute does not require that the issue of a defendant's competency be raised in a particular way or that any motion include facts rising to a particular degree of proof. It requires only that the issue be "raised" – so that facts may be gathered and evaluated at a subsequent hearing. In some cases, revealing the factual basis for competency concerns in a public filing could require the disclosure of discussions protected by the attorney-client privilege or information protected by medical-privacy laws. To protect the defendant's interests, it may be better not to reveal certain matters publicly unless and until a formal competency hearing is held.

*Id.*

{¶ 26} In Case No. 2022 CR 190, the drug possession case, Williams's defense counsel filed a motion for a competency and sanity evaluation. Although the motion provided no bases for counsel's request, the motion itself was sufficient to raise the issue of Williams's competency. Under R.C. 2945.37(B), the trial court was required to hold a competency hearing, and it had the discretion to order Williams to undergo an evaluation prior to the hearing. Because defense counsel's motion adequately raised the question

of Williams's competency, the trial court did not err in holding a hearing on October 6, 2022, to address his competency.

{¶ 27} The record in Case No. 2022 CR 313, the aggravated arson case, does not include a similar motion for a competency and sanity evaluation. However, it is apparent that defense counsel believed a motion for a competency and sanity evaluation had been filed; in a separate filing waiving the five-day time period for holding a no bail hearing, counsel wrote: "The Defendant has filed a competency motion in this case which must be addressed prior to the no bail hearing in order for the Defendant to aid the defense of the Motion at said hearing." Motion, Aug. 4, 2022. The trial court's August 3, 2022 judgment entry granting a competency evaluation also stated that the matter was before the court pursuant to a defense motion requesting a competency evaluation. Although the motion itself is absent, the record demonstrates that the trial court was made aware of defense counsel's concerns regarding Williams's competency. In addition, the State previously had brought Williams's mental state to the court's attention in its motion for no bail. We cannot conclude that the trial court erred in ordering Williams to receive a competency evaluation and in holding the October 6, 2022 competency hearing.

{¶ 28} Williams's first assignment of error is overruled.

### III. Denial of Motion for Self-Representation

{¶ 29} In his second assignment of error, Williams claims that the trial court violated his Sixth and Fourteenth Amendment rights when it denied his request to proceed without counsel. In its appellate brief, the State construes Williams's argument to be that the trial court erred in denying his pro se motion to dismiss counsel – a motion that was

stricken.  Although Williams's brief does not clearly identify the decision on appeal, we disagree with the State's interpretation.  In our view, Williams appears to be challenging the trial court's denial of his oral request to represent himself after the court granted his retained counsel's motion to withdraw.

{¶ 30} Regardless of the order at issue, we conclude that Williams's Sixth and Fourteenth Amendment challenge is not properly before us.  Prior to the filing of the parties' appellate briefs, we addressed several procedural motions filed by Williams.  In our December 1, 2022 Order Regarding Appellant's Procedural Motions, we ruled that "the scope of this appeal shall be limited to review of the October 6, 2022, orders on appeal which found appellant to be incompetent to stand trial and committed him to the Ohio Department of Mental Health – Summit Behavioral Healthcare for restoration treatment."  We specifically referenced that, contrary to Williams's assertion, an order denying a motion to dismiss for a speedy trial violation was not a final appealable order, and we stated that Williams had "failed to identify any other orders that are final."

{¶ 31} Although the trial court orally appointed counsel at the competency hearing, over Williams's objection, the trial court's appointment of new counsel was not part of its written judgment finding Williams to be incompetent and ordering treatment.  Rather, the record shows that the court issued a separate judgment entry ordering the public defender's office to appoint new counsel for Williams.  In addition, we find the issue of the denial of Williams's right to self-representation to be distinct from a competency determination for purposes of R.C. 2505.02(B)(4).  Should Williams ultimately be convicted of the charges against him, he can appeal from the denial of his request to

represent himself at that time. *See State v. Evans*, 6th Dist. Lucas No. L-08-1095, 2008-Ohio-2093.

**{¶ 32}** The trial court's decision ordering the appointment of new counsel was not appealed, is not a final appealable order, and is outside the scope of this appeal.

**{¶ 33}** Williams's second assignment of error is overruled.

## IV. Conclusion

**{¶ 34}** The trial court's judgments will be affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.